UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

PAUL JONES,

Plaintiff.

v.                                                     Civil Action No. 1:20-cv-12076-TSH

MONTACHUSETTS REGIONAL

TRANSIT AUTHORITY

Defendant.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL**

**SUMMARY JUDGMENT FOR COUNT I**

1. Plaintiff, Paul Jones ("Plaintiff"), hereby respectfully submits this Memorandum in

   support of his Motion for Partial Summary Judgment ("PMSJ") Count I (47 U.S.C. §

   227(b)(1)(A)(iii)) **a**gainst Defendant Montachusetts Regional Transit Authority

   ("Defendant") for willfully and knowingly calling and leaving 36 artificial prerecorded

   messages on plaintiff cellular telephone without an emergency purpose or consent ($1500

   per call) for a total of $54,000.00

2. In order for Plaintiff to establish Defendants liability under the Telephone Consumer

   Practices Act ("TCPA") for calls made, he must prove that Defendants called his cellular

   telephone number "using an automatic telephone dialing system" or "an artificial or

   prerecorded voice," without his "prior express consent." Meyer v. Portfolio Recovery

   Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012))." Also See " *Mims v. Arrow Fin.*

   *Servs. LLC*, 565 U.S. 368, 373 (2012).

3.  Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"). The undisputed facts, in this case, show that: **(1)** Defendants admitted they placed unsolicited calls to the plaintiff's cellular telephone Dkt 14¶ pg. 3-4, Also See Ex. 1 Sprint Bill. **(2)** Defendants continued to place unsolicited calls to the plaintiff's cellular telephone despite the plaintiff's numerous requests for the calls to stop orally and by mail; Dkt 14¶ pg. 3-4 Also See Ex. 4 Revoked consent. **(3)** Defendants used an automatic telephone dialing system ("ATDS / IVR") Dkt 14¶ pg. 3, **(4)** and/or a prerecorded voice to make the calls 36 times, See Ex. 3 Prerecorded Messages CD.

4.  Pursuant to 47 U.S.C. § 227(b)(3), Defendant is liable for $54,000.00 in damages for its 36 artificial prerecorded messages which were willful and knowing. The calls constituted telephone solicitations and advertisements, and the plaintiff is a consumer within the meaning of the TCPA.

5.  Defendant invites this Court to turn a blind eye to the TCPA laws as well as Plaintiffs' actual assertion of the claim. Not only is Defendant wrong on these points, but their approach exposes their intentions for what it really is: an attempt to further delay adjudication of the Plaintiffs' claim. Based on Defendant's persistent misrepresentations of the law and facts, the Court should be all the more skeptical of their arguments and refuse to indulge in efforts to waste the Court's time and to prevent Plaintiffs from receiving redress for their harms.

**STATEMENT OF FACTS**
**CALLS TO THE PLAINTIFF**

6. On 06/14/2019 Plaintiff filed his first Verified Amended Complaint ("VAC") in this court putting the defendants on notice that they were violating the TCPA. See 4:19-cv-11093-TSH ¶ 7 (PSOF ¶ 5).

7. On December 11, 2019, the plaintiff filed a second lawsuit for violations of the TCPA putting plaintiffs on notice that they were still violating the TCPA.

8. The Verified Amended Complaints are sworn under penalty and perjury under oath Pursuant to 28 U.S.C. § 1746 and should be treated as a functional equivalent of an affidavit under rule 56 (e). See *Sheinkopf v. Stone*, 927 F.2d 1259, 1262-63 (1st Cir. 1991). See Case# 1:20-cv-12076-TSH. Also, See (PSOF ¶ 32).

9. " It is true that a verified complaint may be "treated as the functional equivalent of an affidavit" and thus as admissible evidence. *See Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 93 n.9 (1st Cir. 2018) (quoting *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991)). *McDermet v. DirecTV, LLC*, Civil Action No. 19-11322-FDS, at *10 (D. Mass. Jan. 21, 2021). (PSOF ¶ 33).

10. Plaintiff subscribed to the telephone number (617) 939-5417 (the "5417 Number"), the 5417 Number is a cellular telephone number serviced by Sprint / T-Mobile, Account Number: 929524857 (PSOF at 1 & 2) Also See Ex. 1 Sprint Bill.

11. Plaintiff pays Sprint/ T-Mobile approximately $111.00 per month for his cellular telephone service. (PSOF ¶ 7) Also, See Ex. 1 Sprint Bill.

12. Plaintiff's employer Commonwealth Community Recovery Division Inc ("CCRD") had a contract with Defendant from 2015 to 2020. (PSOF ¶ 8).

13. Plaintiff never had a bargained-for-exchange contract with the defendants and did not provide the 5417 Number to the defendants in connection with consent for him to receive

Robocalls with artificial prerecord messages, plaintiff did not provide the 5417 Number to Defendants for any other purpose. (PSOF at 9).

14. The unsolicited calls to the 5417 Number came from the telephone number (978) 252-0091 and (978) 424-9002. (PSOF at 10). Between June 17, 2019, and July 10, 2019, the defendants placed 59 calls to the 5417 Number, and 36 calls left an artificial computerized prerecorded message. (PSOF at 10), Also, See Ex. 1 Sprint Bill.

15. Plaintiff seeks Partial summary judgment ("PMSJ") for $1500 for each of the 36 artificial computerized prerecorded messages left in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

### Defendants ATDS / IVR Dialer / Prerecorded Messages

16. Defendants used its Enterprise Outbound Interactive Voice Response ("IVR") dialer to place all 36 unsolicited prerecorded messages to the 5417 number. The IVR is designed and configured to play a prerecorded message on every call. (PSOF 11-12).

17. When Plaintiff answered the unsolicited calls from the defendant, or when he listened to voicemail messages left by the defendant, he heard a prerecorded message.

18. Some of the defendants' voicemail messages were only lasting only a few seconds. Defendants prerecorded messages stated: "*I found 1 trip in this request you must be authorized to except New trips from MART please listen to the following  carefully press five to hear the trips now press six if you cannot accept these trips right now and would like to receive a call back in a few minutes press seven if you wish to decline these trips please make your selection now if you would like to hear these options again press eight.*" (PSOF 14-15).

**Plaintiffs' Requests to Stop the Calls**

19. On or about November 2016 plaintiff started receiving unsolicited prerecorded messages from the defendants and immediately revoked all consent to be called on his cellular telephone orally and by mail. (PSOF ¶ 4) Also, see Exhibit 4.

20. In fact, the plaintiff sent at least three letters revoking all consent to the defendants by Certified Return Receipt USPS mail which they received and signed for. (PSOF ¶ 4), Also, see Exhibit 4.

21. Plaintiff did not consent to receive unsolicited Robocalls with a prerecorded message from the defendants on the 5417 Number. (PSOF ¶ 16).

22. Plaintiff spoke to the defendant's counsel, supervisors, and lower employee and asked that they stop placing unsolicited calls to the 5417 Number and gave the defendant two additional numbers to reach CCRD they promised all calls would stop to the 5417 number. (PSOF ¶ 15).

23. On or about 06/14/2019, Plaintiff emailed a Verified Amended Complaint to the defendants which again placed the defendants on notice that it did not have consent to place unsolicited automated calls to the 5417 Number. Defendants placed 59 calls to the 5417 Number after 06/14/2019. (PSOF ¶ 16).

24. Defendants placed 59 unsolicited calls and left 36 artificial prerecorded messages to the 5417 Number after June 14, 2019, when they were on notice that the plaintiff filed a TCPA lawsuit against the in this court. (PSOF ¶ 21).

**CONSENT**

25. The evidence is strongly in plaintiff's favor on the question of consent such that there is no genuine dispute. See Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 69 (1st Cir.

2016) ("A 'genuine' dispute exists when a jury can reasonably interpret the evidence in

the non-movant's

favor."); Lucoff v. Navient Sol., LLC, 981 F.3d 1299, 1306 (11th Cir. 2020) ("TCPA

consent issues are appropriate for summary judgment . . . when the underlying facts are

not disputed."). Even drawing all reasonable inferences in defendant's favor on the issue

of consent, defendant has failed to meet its burden of showing that plaintiff gave them

consent to place prerecorded calls to his cell phone, See Scott, 550 U.S. at 380. Also See

Lawless, 894 F.3d at 21.

26. FCC regulations prohibit contacting a telephone number listed on the DNC registry

unless the telephone subscriber has given prior consent to contact via a signed, written

agreement: No person or entity shall initiate any telephone solicitation to . . . [a]

residential telephone subscriber who has registered his or her telephone number on the

national do-not-call registry . . . . Any person or entity making telephone solicitations (or

on whose behalf telephone solicitations are made) will not be liable for violating this

requirement if: . . . [i]t has obtained the subscriber's prior express invitation or

permission. Such permission must be evidenced by a signed, written agreement

between the consumer and seller which states that the consumer agrees to be contacted by

this seller and includes the telephone number to which the calls may be placed . . . .

47 C.F.R. § 64.1200(c)(2)(ii). *Mantha v. QuoteWizard.com, LLC*, Civil No. 19-12235-

LTS, (D. Mass. Dec. 13, 2021).

Prior express consent means an agreement, in writing, bearing the signature of the person

called that clearly authorizes the seller to deliver or cause to be delivered to the person

called advertisements or telemarketing messages using an automatic telephone dialing

system or an artificial or prerecorded voice, and the telephone number to which the

signatory authorizes such advertisements or telemarketing messages to be delivered.

## THE FCC 2013 DECLARATORY RULING ELIMINATED THE ESTABLISHED BUSINESS RELATIONSHIP RULE

27. The FCC abolished the Established Business Relationship rule which only applied to

landlines, on October 16, 2013, prior express written consent was required for all

autodialed and/or pre-recorded calls/texts sent/made to cell phones and pre-recorded

calls made to residential land lines for marketing purposes, (See Ex 6: FCC 2013 Order

TCPA Rules, CG Docket No. 11-50, 28 FCC Rcd 6589 ¶ Footnote 113 (2013) ("FCC

2013 Ruling") (PSOF ¶ 22-23).

28. The TCPA requires prior express consent for non-emergency autodialed, prerecorded, or

artificial voice calls to wireless phone numbers, as well as for prerecorded telemarketing

calls to residential wireline numbers.  See 47 U.S.C. § 227(b)(1)(B). Also (See Ex 6 :FCC

2013 Order TCPA Rules, CG Docket No. 11-50 , 28 FCC Rcd 6582 6583 ¶ 25 (2013)

("FCC 2013 Ruling")(PSOF ¶ 24).

29. This court in *Heaton v. Motor Vehicle Assurance*, CIVIL ACTION No. 17-40169-TSH,

at *2-3 (D. Mass. Sep. 28, 2018) stated "The TCPA provides a private cause of action to

persons who receive calls in violation thereof. In 2013, the Federal Communication

Commission ("FCC") required prior express written consent for all autodialed or

prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically:

"[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]".

### THE FCC 2015 DECLARATORY RULING

30. On June 18, 2015, the Federal Communications Commission ("FCC") adopted a proposal to strengthen the protection of consumers against unwanted robocalls. (PSOF at 29).

31. In its June 18, 2015, ruling FCC held that "[c]onsumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time." See EX 2 2015 FCC Order. (PSOF at 30).

32. July 2015 is an important benchmark in the TCPA world because, on July 10, 2015, the FCC issued its omnibus TCPA Declaratory Ruling and Order. The TCPA tasks the FCC with enforcing and promulgating regulations governing the TCPA, 47 C.F.R. § 64.1200 et seq. Acting under its rule-making authority, the FCC purported to "clarify" certain aspects of the TCPA in its July 2015 Ruling. See EX 2 2015 FCC Order

33. The key parts of the Ruling include **Revocation of Consent**. Whether the called person gave prior express consent is fundamental to TCPA claims, as is the issue of whether a person legally can, and did, "revoke" his or her "prior express consent."  Some courts

have held that prior express consent may not be revoked, others have held that it can only be revoked in writing, and still others have held that consent may be revoked orally over the phone. The Ruling makes clear that "[c]onsumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time," including orally.4  The difficulty of disproving a plaintiff's allegation that he or she revoked consent orally will continue to be a major issue in TCPA cases. *See ACA Declaratory Ruling*, 23 FCC Rcd at 565, para. 10.

34. "**Prior express and written consent**" is much more specific and requires: (1) identification of the seller to whom consent is being provided; (2) identification of the consumer's phone number; (3) an affirmative agreement with the consumer; (4) disclosure that the consumer is authorizing the seller to engage in telemarketing; (5) disclosure that the calls will be made using automated technology (i.e., prerecorded messages and/or autodialers); (6) disclosure that the consumer is not required to provide consent as a condition of purchasing goods or services; and (7) provision of a written signature from the consumer (either electronically through E-SIGN or handwritten). (47 C.F.R. § 64.1200(f)(8).) *See ACA Declaratory Ruling*, 23 FCC Rcd at 565, para. 10.

35. For calls or text messages to mobile phones, autodialed or prerecorded informational calls require prior express consent. Autodialed or prerecorded marketing calls or text messages to mobile phones *require prior express written consent*. So, calls to a mobile phone always require some type of consent. The stricter rules for mobile versus landlines are a relic from when the TCPA was enacted.

36. Someone who provides consent has the right to revoke consent. the July 2015 Ruling is the FCC's statement that a consumer may revoke previously given consent "at any time" by any "reasonable means." See EX 2 2015 FCC Order.

## DEFENDANTS ARGUMENTS FAILS

37. Defendants' argument of an  Established Business Relationship fails for calls made to a cellular telephone: the FCC regulations implementing the TCPA permits certain types of autodialed debt collection calls, including calls similar to the ones at issue in this case. *See, e.g.,* 47 C.F.R. § 64.1200(a)(2)(iii), (iv) (exempting calls "made to any person with whom the caller has an established business relationship" and calls "made for a commercial purpose [that do] not include or introduce an unsolicited advertisement or constitute a telephone solicitation"). However, the Defendants fails to recognize that these exemptions do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to landlines. *See* 47 C.F.R. § 64.1200(a)(2).

38. Therefore, the exemption invoked by the defendants is not applicable in this case. Looking to the provisions of the TCPA that apply to autodialed calls to cellular phones and the exemptions promulgated by the FCC, it is clear that the Defendant's argument is without merit. The statutory provision under which the plaintiff brought his claim bans the use of " *any* automatic telephone dialing system" to call " *any* ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

39. The only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent. *See id.* 47 C.F.R. § 64.1200(a)(1)(iii). PSOF ¶ 27).[1]

40. Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship exemption that applies to autodialed calls made to cellular phones. Thus, the content-based exemptions invoked by defendants are inapposite.

    "*See Gager,* 727 F.3d at 273 n. 6 (citing *Breslow v. Wells Fargo Bank, N.A.,* 857 F.Supp.2d 1316, 1322 (S.D.Fla.2012); In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 19 FCC Rcd. 19,215, 19,219–20 (2004))." *Himes v. Client Servs. Inc.*, 990 F. Supp. (PSOF ¶ 33).

41. At first glance, the Defendants argument appears correct: the FCC regulations implementing the TCPA permit certain types of autodialed debt collection calls, not including calls similar to the ones at issue in this case. *See, e.g.,* 47 C.F.R. § 64.1200(a)(2)(iii), (iv) (exempting calls "made to any person with whom the caller has an established business relationship" and calls "made for a commercial purpose [that do] not include or introduce an unsolicited advertisement or constitute a telephone solicitation"). However, the Defendants fail to recognize that these exemptions do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to landlines. *See*47 C.F.R. § 64.1200(a)(2). Therefore, the exemption invoked by the Defendants is not applicable in this case.

---

[1] "The emergency exception does not apply where an entity calls an individual who has previously asked not to be contacted. See, e.g., Coleman v. Rite Aid of Georgia, Inc., 284 F. Supp. 3d 1343, 1346-47 (N.D. Ga. 2018). Such is allegedly the case here." *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 504 n.4 (D.R.I. 2020).

42. Looking to the provisions of the TCPA that apply to autodialed calls to cellular phones and the exemptions promulgated by the FCC, it is clear that Defendants argument is without merit. The statutory provision under which plaintiff brought his claims bans the use of " *any* automatic telephone dialing system" to call " *any* ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent. *See id.* 47 C.F.R. § 64.1200(a)(1)(iii). Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones. Thus, the content-based exemptions invoked by Defendant are inapposite. *Gager v. Dell Fin. Servs., Llc.*, 727 F.3d 265, 273 (3d Cir. 2013)

## ARGUMENT

## Legal Standard

43. Summary judgment is a dispositive motion used "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). The moving party carries the initial burden of directing the court to specific pleadings, affidavits, or discovery in order to demonstrate "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 152 (1st Cir. 2009). A dispute is "genuine" when there is "sufficient evidence to permit a reasonable trier of fact to resolve the issue in the

nonmovant's favor." *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* <u>42 F.3d 668,</u> <u>684</u> (1st Cir. 1994). Furthermore, a fact is "material" if it "has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine,* <u>75 F.3d 716, 721</u> (1st Cir. 1996).

44. "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Carroll v. Xerox Corp.,* <u>294 F.3d 231, 236</u> (1st Cir. 2002). The court must view the evidence in a "light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Navarro v. Pfizer Corp.,* <u>261 F.3d 90, 94</u> (1st Cir. 2001) (quoting *Griggs-Ryan v. Smith,* <u>904 F.2d 112,</u> <u>115</u> (1st Cir. 1990)). Thus, conflicting evidence in the record "favor[ing] in some lights the defendant[] and in others the plaintiff" is best left for a jury "to determine which version of the facts is most compelling." *Sensing,* <u>575 F.3d at 153</u> (citing *Calero-Cerezo,* 355 F.3d at 19). *Cadrin v. Monterey Fin. Servs., Inc.*, CIVIL ACTION No. 12-40112-TSH, at *3-4 (D. Mass. Aug. 19, 2013).

45. Here there is no genuine issue of material fact that:

(A) Defendants placed 59 calls to the plaintiff's cellular telephone, 36 of the calls left artificial prerecorded message all of which was knowing and willful; See Dkt 6 VAC ¶ 18, 23. Also See EX 1.

(B) Defendants used an automatic telephone dialing system ("ATDS") and/or a prerecorded voice to make the calls; See VAC Dkt ¶ 7,10, 13.and

(C) Defendants did not have plaintiffs' prior express consent or prior express written consent to make the calls nor was the call for an emergency purpose. See Dkt 6 VAC ¶ 9-12  (PSOF ¶ 21, 25).

46. There is no exception for autodialed or artificial/computerized (prerecorded) calls to cell phone numbers of persons with whom the caller has an established business relationship, under the October 16, 2013, new established relationship TCPA Rule See 47 C.F.R § 64.1200(a)(l). Also See (PSOF ¶ 34).

47. Defendants may argue that the calls they placed are exempt from § 227(b)(1)(A)(iii). While the First Circuit has yet to address the issue, Judge Barbadoro in New Hampshire agreed with the Third Circuit that "[t]he only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent. Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones." *Himes v. Client Services*, *Inc*., 990 F. Supp.2d 59, 68 (D.N.H. 2014) (quoting *Gager v. Dell Fin*. *Servs*. *LLC*, 727 F.3d 265, 273 (3d Cir. 2013) (further citation omitted)). In essence, if an autodialer is used to call a cellular phone or service for which the called party is charged for the call, permission is required or § 227(b)(1)(A)(iii) applies. *See id.; Hamlett v. Santander Consumer USA Inc*., 931 F. Supp.2d 451, 456 (E.D.N.Y. 2013); *Bentley v. Bank of America, N.A*., 773 F. Supp.2d 1367, 1374 (S.D. Fla. 2011).*Jones v. Experian Info. Sols.*, CIVIL ACTION No. 14-10218-GAO, at *15 n.9 (D. Mass. July 19, 2016) Himes v. Client Services, Inc., 990 F. Supp.2d 59, 68 (D.N.H. 2014) (quoting Gager v. Dell Fin. Servs. LLC, 727 F.3d 265, 273 (3d Cir. 2013).

48. Plaintiff adequately alleged facts establishing a violation of the TCPA provision, the portion of the regulation that he contends governs here, subsection (a)(1)(iii), prohibits "any telephone call" made to a cell phone—again, regardless of content—unless the call was made either for emergency purposes or with the prior express consent of the person being called. Plaintiff has alleged facts plausibly suggesting that the call he received did not involve an emergency and was not made with his prior express consent. Thus, nothing in the regulation supports dismissal of plaintiff action at the motion-to-dismiss stage. *Loyhayem v. Fraser Fin. & Ins. Servs.*, 7 F.4th 1232, 1234-35 (9th Cir. 2021).

49. The TCPA regulates telemarketing calls is by prohibiting the use of automated calling systems. Section 227(b)(1)(A) makes it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). "In short, the TCPA generally makes it unlawful to call a cell phone using" an ATDS. *ACA Int'l. v. FCC*, 885 F.3d 687, 693 (D.C. Cir. 2018). Similarly, it prohibits calling cell phones or residential landlines using "an artificial or prerecorded voice." 47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B). Also See *McDermet v. DirecTV, LLC*, Civil Action No. 19-11322-FDS, at *11 (D. Mass. Jan. 21, 2021).

50. Subject to exceptions not pertinent here, the TCPA principally outlaws four practices. First, the Act makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone , or other service for which the receiver is charged for the call. See 47 U.S.C. §

227(b)(1)(A), also See *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 373 (2012), *Barr v. American Assn. of Political Consultants, Inc.*, 140 S. Ct. 2335, 2357 (2020), *Breda v. Cellco P'ship*, 934 F.3d 1, 4 (1st Cir. 2019).

51. Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent . § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D).

52. The TCPA delegates authority to the FCC to ban artificial and prerecorded voice calls to businesses, § 227(b)(2)(A), and to exempt particular types of calls from the law's requirements, § 227(b)(2)(B), (C). The Act also directs the FCC to prescribe regulations to protect the privacy of residential telephone subscribers, possibly through the creation of a national "do not call" system . § 227(c). See *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 373-74 (2012).

53. "The TCPA is a strict liability statute , see Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th Cir. 2011), but provides for treble damages in the case of "willful[ ] or knowing[ ]" violations, 47 U.S.C. § 227(b)(3)." *Breda v. Cellco P'ship*, 934 F.3d 1, 5 (1st Cir. 2019).

54. Here, the Defendants cannot assert that it had the plaintiff's express consent or express written consent to call the plaintiff on his cellular telephone with artificial prerecorded messages. (PSOF ¶ 25).

## PLAINTIFF HAS MET THE THREE ELEMENTS OF A TCPA CLAIM

### Defendants Called Plaintiffs Cellular Telephone

55. Defendants called the 5417 Number 59 times and left 36 artificial prerecorded messages between June 17, 2019, and July 10, 2019. (PSOF ¶ 11-15 ). See VAC Dkt 6 ¶ 5-8, <u>Thus, the first element of the plaintiff's TCPA claim is satisfied. Also see Ex. 1</u>

### Defendants left prerecorded message to the 5417 number

56. Defendant left 36 prerecorded message on the plaintiff's cellular telephone 5417 number. Defendants Prerecorded Computerized artificial prerecorded messages was silent, disconnected in the beginning, middle or the call was dropped, when the plaintiff listened to the prerecorded message it stated *"I found 1 trip in this request you must be authorized to except New trips from MART please listen to the following  carefully press five to hear the trips now press six if you cannot accept these trips right now and would like to receive a call back in a few minutes press seven if you wish to decline these trips please make your selection now if you would like to hear these options again press eight."*. <u>See Ex 3 prerecorded messages.</u>

57. The TCPA prohibits calls to a cellular phone featuring a prerecorded voice when the called party has not consented to receive such calls. 47 U.S.C. § 227(b)(1)(A)(iii), <u>Thus, the second element of the plaintiff's TCPA claim is satisfied.</u> See VAC Dkt 6 ¶ 7,10, 13 (PSOF ¶ 11-15 ).

### Plaintiff Did Not Consent to Receive Calls on

### his cellular telephone 5417 Number

58. This court in its prior ruling have concluded that "Prior express consent is an affirmative defense However, addressing the elements of a TCPA claim under <u>§ 227(b)(1)(A)(iii)</u> for the first time, we understand consent to be an affirmative defense , which the caller has

the burden to prove; lack of consent is not an element of the called party's claim. <u>See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 FCC Rcd. 559, ¶ 10 (2008), *Breda v. Cellco P'ship*, 934 F.3d 1, 5 n.4 (1st Cir. 2019), <u>*Heaton v. Motor Vehicle Assurance*, CIVIL ACTION No. 17-40169-TSH, at *8 (D. Mass. Sep. 28, 2018).</u>

59. Prior express consent is an affirmative defense to an alleged TCPA violation. "*the court also noted that the "defendant ... presented no evidence of express permission from any recipient, and never sought prior permission from recipients"* <u>*Yaakov v. Act, Inc.*, 328 F.R.D. 6, 12 (D. Mass. 2018)</u> *Yaakov v. Act, Inc.*, <u>328 F.R.D. 6, 12 (TSH) (D. Mass. 2018)</u> Prior express consent must come from the "called party." *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) & 227(b)(1)(B). 'Called party' means the "person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 643 (7th Cir. 2012) (*as cited in Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 420 (E.D.N.Y. 2013)); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) (Under TCPA "called party" does not mean intended recipient of the call but subscriber to the cell phone service).

60. Here, it is undisputed that the defendants did not have plaintiffs' consent to call his cellular telephone (5417) using an ATDS or an artificial prerecorded voice message or with an emergency purpose. <u>Thus, the third element of the plaintiff's TCPA claim is satisfied.</u> See VAC Dkt 6 ¶ 9-10,12, (PSOF ¶ 11-15,16-20).

**STANDING**

18

61. This court has found in a similar case that "Additionally, "a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing." Gibbs v. SolarCity Corp., 239 F. Supp. 3d 391, 395 (D. Mass. 2017). " *Katz v. Liberty Power Corp.*, Civil Action No. 18-cv-10506-ADB, at *25 (D. Mass. Sep. 24, 2019).

62. In order satisfy the standing requirement for subject matter jurisdiction, a plaintiff must prove that s/he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). "A 'concrete' injury must be 'de facto'; this is, it must actually exist." *Id*. at 1549. Intangible harm can amount to 'concrete' injury for the purposes of establishing standing. *Id. Heaton v. Motor Vehicle Assurance*, CIVIL ACTION No. 17-40169-TSH, at *6-7 (D. Mass. Sep. 28, 2018.) *Gibbs v. Solarcity Corp.*, 239 F. Supp. 3d 391, 394-95 (TSH) (D. Mass. 2017).

63. Plaintiff alleged in his Amended Verified Complaint  Dkt 6 ¶ 16 , that he had suffered a concrete Article III harm such as : invasion of privacy, Intrusions upon plaintiffs' cellular telephone, wasting plaintiff time, depleting my cell phone battery, personal injury, actual damages and loss of income.

64. In Gibbs v. SolarCity Corp., a plaintiff whose number was on the DNC list alleged harassment due to unsolicited calls. 239 F. Supp. 3d 391, 395 (D. Mass. 2017). There, the court noted that "[t]he majority of courts considering similar facts have found them

sufficient to satisfy the requirement of concrete injury, and several have held that a mere

technical violation of the TCPA is, by itself, a concrete injury sufficient to confer

standing." Id. As in Gibbs, this same court recommended a

determination that comports "with the majority of courts finding that Congress, when it

enacted the TCPA, recognized receiving unsolicited calls is a legally cognizable harm

and comprises a 'concrete' injury." Id. at 395-396. Further, the court should recommend

that plaintiff

passes the prudential hurdle because he alleged a particularized harm caused by what he

describes as defendant's calls. This alleged harm falls within the zone of interests

protected by the TCPA and its DNC list. See Pagan, 448 F.3d at 27.


**Defendants Violated the TCPA Each Time they Dialed and left an artificial**

**prerecorded message on the plaintiff's cellular telephone**

65. Defendants violated the TCPA each time it made or initiated a call to the plaintiff's cell

phone number 5417.  In 1991, Congress enacted the TCPA to regulate the explosive

growth of the telemarketing industry. In so doing, Congress recognized that unrestricted

telemarketing can be an intrusive invasion of privacy.

66. Defendants dialed the 5417 Number 59 times between June 17, 2019, until July 10, 2019,

June 17, 2019, using its IVR dialer and left 36 artificial prerecorded messages, every call

was a violation of the TCPA "47 U.S.C. § 227 (b)(1)(A)(iii)" *Barton v. Temescal*

*Wellness, LLC*, 525 F. Supp. 3d 195, 198 (TSH) (D. Mass. 2021).

**Damages Minimum Statutory Damages**

67. The TCPA provides, at a minimum, "$500 in damages for each such violation" of the Act. 47 U.S.C. § 227(b)(3)(B). Defendants placed 59 calls and left 36 artificial computerized prerecorded messages as such, at a minimum, Defendants is liable to plaintiff for $54,000.00 in statutory damages for 36 prerecorded messages.

**Treble Damages**

68. Private party litigants can seek the following relief under the TCPA: **(1)** Injunctive relief; **(2)** Actual damages or $500 for each violation of the Act (whichever is greater); or **(3)** Both Injunctive relief and damages (47 U.S.C. § 227(b)(3)).

69. Courts also have the discretion to treble damage awards if a violation of the Act is "willful and knowing," i.e., each $500 violation could be increased to $1,500 in the court's discretion.

70. What constitutes a "willful and knowing" violation of the TCPA depends on the court in which the action is filed. Specifically, some courts hold that a defendant must know that its actions violate the TCPA. Other courts, however, hold that a plaintiff need only show that the defendant willfully or knowingly sent the unsolicited fax, or made the prerecorded call, concluding that knowledge of the law is unnecessary.

71. Here the defendants were on notice that the plaintiff revoked consent by Certified Return Receipt by mail and orally over 50 times since November 2016, defendants also had a pending lawsuit for violations of the TCPA in this court as early as June 2019 and knew the plaintiff did not consent to the calls to his cell phone mainly leaving artificial prerecorded messages.

72. The TCPA provides for trebling of damages when the "defendant willfully, or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3). There is a split of authority as to what constitutes a willful or knowing violation:

*"The court in Texas v. Am. Blastfax, Inc., 164 F.Supp.2d 892 (W.D.Tex.2001), adopted a heightened standard because "[t]he Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." Id. at 899. Other courts, however, have interpreted willful or knowing to mean volitional or intentional, requiring that a plaintiff need only show that a defendant voluntarily made the impermissible communication that violated the TCPA. See, e.g., Bridgeview Health Care Ctr. Ltd. v. Clark, No. 09 C 5601, 2013 WL 1154206 at \*7 (N.D.Ill. Mar.19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."); Stewart v. Regent Asset Mgmt. Solutions, No. 10–CV–2552, 2011 WL 1766018 at \*7 (N.D.Ga. May 4, 2011); Sengenberger v. Credit Control Svcs., Inc., No. 09 C 2796, 2010 WL 1791270 at \*6 (N.D.Ill. May 5, 2010), adhered to on reconsideration, 2010 WL 6373008 (N.D.Ill. June 17, 2010). Echevvaria, 2014 WL 929275 at \*9"*

73. Like in *Echevvaria*, defendants conduct satisfies either standard. *See id.* at \*11 ("[T]he Court finds that Diversified's conduct was willful because Diversified knew or should have known that (1) it was using LiveVox, that was (or at least might be held to be) an

ATDS and (2) it was calling the wrong person despite being notified of the error on February 1, 2013").

74. First, defendants knew or should have known that its IVR dialer, configured to dial telephone numbers and send out prerecorded voice messages, . Moreover, defendants is aware of TCPA restrictions on prerecorded messages to cellphones without the party's consent.

75. Second, Defendants knew or should have known that it was calling the plaintiff after he revoked all consent, and they did not have express permission or express written permission to place the prerecorded calls to plaintiff cell phone 5417. Plaintiff had several conversation with defendants' counsel, supervisors and lower employees and asked that all calls to his cellular telephone stop.

76. Nevertheless, defendant still placed 59 additional calls to the 5417 Number of which 36 left prerecorded messages.

77. Pursuant to 47 U.S.C. § 227(b)(3), defendants should pay $54,000.00 in damages for 36 calls it placed to plaintiff ,all where after they had notice and plaintiff request to stop, for willful and knowing  See *Echevvaria*, 2014 WL 929275 at *12 (defendant ordered to pay $38,000.00 in damages for its twenty-seven violations of the TCPA, twenty-six of which were willful or knowing); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 896 (E.D. Mich. 2012) (treble damages awarded where defendants continued to call after being put on notice that plaintiff's phone number was not associated with another person's account - defendants were in a better position to review its system to ensure that plaintiff's number was not tied to any remaining accounts); *FCC Strengthens Consumer Protections Against Unwanted Calls And Texts* (Federal Communications Commission,

June 18, 2015) ("Consumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time."). (PSOF at 29).

## CONCLUSION

Based the foregoing, Plaintiff respectfully requests the Court grant his Partial motion for summary judgment on his Count I claim under the TCPA 47 U.S.C. § 227(b)(1)(A)(iii) and enter a judgment against defendant for $54,000.00 in damages for its 36 artificial prerecorded messages left on plaintiffs' cellular telephone, 36 of which were willful and knowing. Plaintiff request discovery to flesh out proof defendants used an Automatic Telephone Dialing System to make 59 calls to plaintiff, before evidence is spoiled.


Paul Jones /s/ Paul Jones

572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com

617-939-5417

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2022, I electronically filed the foregoing through the CM/ECF

system which sent notice of such filing to the following:

Paul Jones /s/ Paul Jones                                   June 21, 2022

572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com


Deborah I. Eckers

101 Arch St, 12th Floor

Boston, Ma 02110

617-654-1714

decker@k-plaw.com

**VERIFICATION AND CERTIFICATION OF**

**MOTION FOR PARTIAL SUMMRY JUDGMENT**

**STATE OF MASSACHUSETTS**

**Plaintiff, Paul Jones, states as follows**

I am the Plaintiff in this Partial Motion for Summary Judgement ("PMSJ"). I believe that this PMSJ is well-grounded in fact and warranted by existing law and Firsthand Knowledge by a good faith argument for and the extension, modification, or law. I have filed it in good faith and solely for the purposes set forth in it. The plaintiff has reviewed the PMSJ, regarding the allegations of which the plaintiff has personal Firsthand knowledge, of the fact in this PMSJ and can testify to the same if called to do so, the plaintiff knows or believes them to be true. Regarding the allegations of which the plaintiff does not have personal knowledge, the plaintiff believes them to be true based on specified information, documents, or both.

Pursuant to 28 U.S.C. § 1746 , I Paul Jones Plaintiff hereby declare, under the pains and penalties of perjury, that the facts stated in this PMSG, Affidavit, the previously filed Verified Amended Complaint, and the Statement of Facts are personally known to me, and that they are true and correct, and I could testify if called to do so.

Paul Jones /s/ Paul Jones                    June 13, 2022

572 Park Street

Stoughton, Ma 02072

PJ22765@gmail.com